**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

ANDREW G. JR.[1],

                 **Plaintiff,**

v.

                                                   20-CV-6085-HKS

**COMMISSIONER OF SOCIAL SECURITY,**

                 **Defendant.**

---

## **DECISION AND ORDER**

Plaintiff, Andrew G. Jr., brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied his application for supplemental security income ("SSI") under Title XVI of the Act.  Dkt. No. 1.  This Court has jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to the disposition of this case by the undersigned pursuant to 28 U.S.C. § 636(c).  Dkt. No. 17.

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  Dkt. Nos. 13, 15.  For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 13) is GRANTED in part and DENIED in part, and Defendant's Motion for Judgment on the Pleadings (Dkt. No. 15) is DENIED.

---

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Decision and Order will identify plaintiff by first name and last initial.

1

## BACKGROUND

On June 9, 2016, Plaintiff protectively filed an application for SSI with the Social Security Administration ("SSA") alleging disability beginning on July 1, 2007, due to: Posttraumatic Stress Disorder ("PTSD"); Hepatitis C; Hydrosol; Hernia; High Blood Pressure; Borderline Diabetes; Skin Disorder; Glaucoma; and Tinnitus.  Tr.[2]  229-235, 254.  On July 29, 2016, Plaintiff's claims were denied by the SSA at the initial level and he requested review.  Tr. 75-89.  On September 5, 2018, Plaintiff appeared with his attorney and testified, along with a vocational expert ("VE") before Administrative Law Judge, Rosanne Dummer ("the ALJ").  Tr. 40-71.  The ALJ held a supplemental hearing on October 24, 2018, with Plaintiff's attorney and Medical Expert, Eric Puestow, M.D. ("Dr. Puestow").  Tr. 1118-1154.  On November 13, 2018, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act.  Tr. 12-39.  Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on July 16, 2019. Tr. 1-6.  Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision.  Dkt. No. 1.

## LEGAL STANDARD

I.   **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d

---

[2] References to "Tr." are to the administrative record in this matter.  Dkt. No. 5.

145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

II.     **Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

I.   **The ALJ's Decision**

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above.  At step one, the ALJ found Plaintiff has never engaged in substantial gainful activity.  Tr. 18.  At step two, the ALJ found Plaintiff has the following severe impairments:  lumbar spondylosis; personality disorder; and posttraumatic stress disorder.  Tr. 18.  The ALJ found Plaintiff has the following non-severe impairments: hepatitis C; hypertension; right inguinal surgery; skin disorder; bunion on his left great toe; polysubstance abuse; cystic pancreatic lesion; and obesity.  Tr. 18.  At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment.  Tr. 19-20.

Next, the ALJ determined Plaintiff retained the RFC to perform a range of medium work.[3]  Tr. 20-32.  The ALJ concluded Plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently; sit eight of eight hours, four hours at a time; stand or walk six of eight hours, three hours at a time.  *Id.*  The ALJ also concluded Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; occasionally work at unprotected heights and in extreme heat/cold.  *Id.*  Plaintiff could tolerate loud noise such as heavy traffic.  *Id.*  Secondary to mental impairments, he could understand, remember, and carry out instructions for routine, repetitive, unskilled work.  *Id.*  Plaintiff could sustain attention and concentration for two-hour segments of

---

[3] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [SSA] determines that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

5

time in an eight-hour workday.  *Id.*  He could perform brief and superficial, work-related, task-oriented contact with co-workers and supervisors and brief, superficial contact with the public.  *Id.*  Lastly, the ALJ concluded Plaintiff could adapt to changes in the workplace for routine, repetitive unskilled work, but should not perform fast-paced high-production goal work.  *Id.*

At steps four and five, the ALJ observed Plaintiff has no past relevant work, but found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform in consideration of his age (advanced age (58-60 for relevant period), closely approaching retirement), education, work experience, RFC, and the VE's testimony.  Tr. 32-34.  Specifically, Plaintiff could perform the following unskilled medium occupations:  Dining Room Attendant; Meat Checker; Panel Installer; Trimmer; and Cook Helper.  Tr. 33.  Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act from May 19, 2016 to November 16, 2018.  Tr. 34.

II.     **Analysis**

Plaintiff argues the Commissioner's decision should be remanded for further administrative proceedings because the ALJ's RFC determination is unsupported by substantial evidence.  Dkt. No. 13 at 16-17.  Plaintiff argues the ALJ erred in evaluating the medical evidence in support of the physical RFC and by relying on her own lay interpretation of medical evidence in support of the mental RFC.  *Id.*  The Commissioner contends the decision should be affirmed because the ALJ reasonably assessed the medical evidence and considered the entire record in support

6

of the RFC assessment.  Dkt. No. 15 at 1.  This Court finds the mental RFC assessment is supported by substantial evidence, however, the physical RFC is not for the reasons that follow.

### A. The Mental RFC is supported by substantial evidence.

Plaintiff argues the ALJ improperly relied on her own lay opinion in support of the Mental RFC determination.  Tr. 13 at 27-28.  The Commissioner contends the ALJ properly considered the evaluations of four mental health professionals, in support of the Mental RFC determination, and also Plaintiff's mental health treatment records, and Plaintiff's own statements regarding his activities of daily living.  This Court agrees with the Commissioner for the reasons that follow.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  The ALJ addressed medical evidence regarding Plaintiff's mental functioning in assessing the Mental RFC from the following mental health professionals:  Adam Brownfield, Ph.D. ("Dr. Brownfield"); S. Juriga, Ph.D. ("Dr. Juriga"); Gayle Alesi, LCSW ("LCSW Alesi"); Jay Pruiett, LCSW ("LCSW Pruiett").  Tr. 26-28.

Dr. Brownfield performed a psychological consultative examination of Plaintiff on July 19, 2016, and found no evidence of limitations in following and understanding simple directions and instructions; performing simple tasks

independently, maintaining attention and concentration; maintaining a regular schedule; learning new tasks; and performing complex tasks independently.  Tr. 477.  Dr. Brownfield diagnosed posttraumatic stress disorder; unspecified disruptive impulse control, and conduct disorder; alcohol, cannabis, cocaine and opiate use (all in sustained remission).  *Id.*  The doctor opined Plaintiff was markedly limited in making appropriate decisions and moderately limited in relating adequately with others and appropriately dealing with stress.  *Id.*  Lastly, the doctor noted that Plaintiff's psychiatric problems were not significant enough to interfere with Plaintiff's ability to function on a daily basis.  *Id.*  The ALJ accorded "some weight" to Dr. Brownfield's opinion, observing that the marked limitations with making appropriate decisions appeared to reflect Plaintiff's life choices and not his ability to work.  Tr. 26.  The ALJ explained that the Mental RFC permits unskilled work and limited contact with people, which the ALJ noted was favorable to Plaintiff.  *Id.*

Dr. Juriga, a State Agency Psychological Consultant, reviewed Plaintiff's examination records from Dr. Brownfield and Unity at Park Ridge Behavioral on July 21, 2016, as part of Plaintiff's initial disability determination.  Tr. 75-83.  Dr. Juriga noted Plaintiff's history of personality disorder, and PTSD related to his history of incarceration due to the offense he committed.  Tr. 79.  The doctor addressed Dr. Brownfield's observation that Plaintiff's insight and judgement were poor as he has urges to use drugs.  Tr. 79.  Dr. Juriga concluded Plaintiff suffered from anxiety and personality disorders, but concluded both impairments were non-severe as they did not significantly limit Plaintiff's physical or mental ability to do basic work activities.  Tr. 81.  The ALJ

accorded Dr. Juriga's opinion "significant weight", referencing the doctor's finding that Plaintiff had no severe mental impairment.  Tr. 26.  The ALJ also observed that documentation received at the hearing level indicated routine medication management and that Plaintiff's therapy involved counseling with an emphasis on mindfulness and cognitive behavioral therapy to improve coping skills.  *Id.*

The ALJ also discussed LCSW Alesi's psychological assessment of Plaintiff from May 18, 2016, prepared for Monroe County DHS.  Tr. 27.  The therapist indicated that Plaintiff began treatment on May 10, 2016, for PTSD and required three months of treatment before participating in other activities aside from treatment.  Tr. 849.  The therapist noted Plaintiff appeared well groomed with logical and goal directed thoughts, dysphoric mood, congruent affect, and no evidence of psychosis or lethality issues.  Tr. 848.  She also observed Plaintiff demonstrated the capacity to follow, understand and remember simple instructions and directions; regularly attend to a routine and maintain a schedule; and maintain basic standards of hygiene and grooming.  Tr. 849.  Lastly, she indicated there was insufficient data to evaluate Plaintiff's capacity to maintain concentration/attention for role tasks; perform low stress and simple tasks; and perform simple and complex tasks independently.  Tr. 849.  The ALJ accorded "some weight" to LCSW Alesi's psychological assessment, finding it consistent with the three-month treatment period specified by the therapist and did not indicate significant limitations.  Tr. 28.

The ALJ also considered a psychological assessment prepared by LCSW Pruiett nearly a year later on April 18, 2017.  Tr. 28.  LCSW Pruiett stated that he evaluated Plaintiff for PTSD and Antisocial Personality Disorder approximately twenty times over the past year and opined Plaintiff would be unable to participate in any activities, except treatment for six months.  Tr. 824-844.  He also opined Plaintiff had moderate limitations (unable to function 10-25% of the time) with following, understanding and remembering simple instructions and directions; and with maintaining attention and concentration for role tasks.  Tr. 844.  The therapist also noted that there was insufficient data to evaluate Plaintiff's capacity to perform simple and complex tasks independently and perform low stress tasks.  *Id.*

The ALJ accorded LCSW Pruiett's opinion "some weight", observing that while Plaintiff saw the therapist for individual therapy, he had missed multiple appointments, but progressed when engaged in treatment.  Tr. 28.  The ALJ explained that subsequent treatment notes from May of 2017 indicated a gap in contact, but that by June of 2017 Plaintiff had progressed to a point where the therapist prepared to assess termination of treatment.  *Id.*   Treatment records from August of 2017 reflected Plaintiff was to continue his medication and individual therapy, with the goal of successful termination within three months.  *Id.*

Plaintiff cites *Lilley v. Berryhill*, 307 F. Supp. 3d 157, 161 (W.D.N.Y. 2018) and *Valentin v. Comm'r of Soc. Sec.*, 2020 WL 967033, at *5 (W.D.N.Y. Feb. 28, 2020) in furtherance of his argument that the ALJ relied on her own lay opinion in assessing his mental RFC.  However, both cases are distinguishable.  For example, in *Lilley*, the ALJ assessed the effect of the claimant's depression on her mental RFC without the benefit of *any* medical opinion.  307 F. Supp. 3d 157, 159 (W.D.N.Y. 2018) (emphasis added).   Unlike the ALJ in *Lilley,* the ALJ considered evaluations from four mental health professionals in assessing Plaintiff's mental RFC, explaining the varying levels of weight she accorded to each opinion.

The ALJ in *Valentin* accorded "little weight" to the medical opinions in the record that addressed the claimant's capacity for neck movement in a work setting and then subsequently failed to clearly explain the neck mobility assessment incorporated in the physical RFC, which ultimately conflicted with both medical opinions.  2020 WL 967033, at *5 (W.D.N.Y. 2020).  Unlike the ALJ in *Valentin*, the ALJ in this matter weighed opinions from four medical professionals, according "some weight" to Plaintiff's therapists and the consultative examiner, and "significant weight" to the state agency psychological consultant.  The ALJ also discussed Plaintiff's activities of daily living and mental health treatment records, assessing the following limitations in the mental RFC:

> "He could sustain attention and concentration for at least two-hour segments of time in an eight-hour day.  The claimant could perform brief and superficial, work-related, task-oriented contact with co-workers and supervisors; he could perform brief and superficial contact with the public.  The claimant could adapt to changes in the workplace for routine, repetitive tasks.  He may avoid fast paced or high production goal work."  Tr. 26

This Court finds that the mental RFC is supported by substantial evidence where the ALJ properly assessed the relevant medical opinions of four mental health professionals.  *See Matta*, 508 F. App'x 53, 56 (2d Cir. 2013) (residual functional capacity need not perfectly correspond to any one opinion).

### B. The Physical RFC is not supported by substantial evidence.

Plaintiff argues the physical RFC assessment that Plaintiff can perform a range of unskilled medium work is not supported by substantial evidence because the ALJ erred in evaluating the medical evidence.  Tr. 13 at 16.  This Court agrees and finds that remand is warranted for the reasons that follow.

The ALJ concluded that Plaintiff could perform a range of unskilled medium work despite his lumbar spondylosis, including the ability to occasionally lift up to 50 pounds and frequently lift up to 25 pounds.  Tr. 20.  The RFC is an assessment of "the most [Plaintiff] can still do despite [his] limitations."  20 C.F.R. § 416.945(a)(1).[4]  An ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources.  *Id.* §§ 416.927(d), 416.945(a)(3), 416.946(c).

It is unclear to this Court how the ALJ, who is not a medical professional, determined that Plaintiff could frequently lift or carry up to 25 pounds, without a

---

[4] Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, this Court reviews the ALJ's decision under the previous regulations and SSRs.

12

supporting medical opinion. "While an ALJ is free to choose between properly submitted medical opinions, [she] is not free to set [her] own expertise against that of a physician who submitted an opinion to or testified before [her]." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (brackets omitted) (internal quotation omitted). The ALJ explained that the physical RFC assessment is supported by record medical evidence, routine primary care, Dr. Puestow's opinion, Dr. Dave's opinion, reported activities, and inconsistencies in the Plaintiff's statements with record evidence. Tr. 32. However, neither Dr. Puestow nor Dr. Dave opined that Plaintiff could frequently lift or carry up to 25 pounds.

As the ALJ explained in her decision, a medical expert is used to resolve conflicts in the record and to provide a longitudinal view of the objective record evidence. Tr. 31 (citing 20 C.F.R. 416.927 (a)-(d)). The ALJ explained that she contacted medical expert, Dr. Puestow where orthopedist, Dr. Patel, noted Plaintiff "only required conservative care" for his lumbar spondylosis, in contrast with medical statements from the other examining doctors who assessed further limitations. Tr. 31-32. Dr. Puestow reviewed Dr. Patel's examination notes[5] and objective medical imaging, in contrast with the medical statements from the other examining doctors and

---

[5] Dr. Patel observed that Plaintiff's X-Ray findings were "compatible with the presence of degenerative spondylosis especially in the lower lumbar spine." Tr. 1016. Dr. Patel observed Plaintiff's limited lumbar flexion to the knees causing low back pain and observed limited lumbar extension due to low back pain. Tr. 1021. He assessed midline tailbone and lumbosacral axial low back pain, likely regional myofascial in etiology in a patient with underlying degenerative pathology at L5-S1 greater than L4-L5. *Id.* He referred Plaintiff for Physical Therapy; instructed him to avoid repetitive bending, twisting, and lifting motions and prescribed the medications Mobic and Flexeril (when necessary for muscle spasms and tightness). *Id.* He also instructed Plaintiff to utilize over-the-counter remedies such as Tylenol Extra Strength, for pain and Therma Care Heat Wraps for use as a muscle relaxant, when necessary. *Id.*

13

opined that Plaintiff could frequently lift or carry only 11 to 20 pounds and could *occasionally* lift or carry 21 to 50 pounds. Tr. 1087, 1112. The ALJ accorded "great weight" to Dr. Puestow's opinion, yet failed to address the conflict between the doctor's findings on the amount of weight that Plaintiff could lift or carry, and her assessment that Plaintiff could frequently lift 25 pounds. Tr. 30. Therefore, the ALJ improperly relied on her own lay opinion to conclude that Plaintiff could frequently lift 25 pounds—in order to perform medium work.

None of the medical providers in the record opined that Plaintiff could frequently lift over 20 pounds and each assessed similar or greater limitations than Dr. Puestow. For example, Karl Eurenis, M.D. ("Dr. Eurenis"), examined Plaintiff on January 8, 2015, and opined Plaintiff could lift twenty pounds occasionally and ten pounds frequently. Tr. 858. On May 30, 2017, Plaintiff's primary care physician, Thomas Gregg, M.D. ("Dr. Gregg") opined Plaintiff could participate in work activities for up to forty hours per week, but with no lifting over ten pounds for three months and could only perform one to two hours of lifting/carrying per eight-hour workday. Tr. 837. The doctor also opined Plaintiff could only push, pull and bend for two to four hours during an eight-hour workday. *Id.* On September 6, 2017, Dr. Gregg opined Plaintiff could not lift over ten pounds for six months due to right-sided lumbar spinal pain. Tr. 832-33. Consultative examiner, Nikita Dave, MD ("Dr. Dave"), who examined Plaintiff on July 19, 2016, instructed, "[Plaintiff] should avoid any lifting, carrying, pushing, pulling, and strenuous physical activity due to recent inguinal hernia repair, as well as bilateral hydrocele and as well as hepatitis C." Tr. 483. Thomas McElligott, M.D. ("Dr.

14

McElligott"), who initially examined Plaintiff on January 20, 2015, opined that Plaintiff should avoid heavy lifting due to a probable right inguinal hernia.  Tr. 460.

The medical record contains objective imaging of Plaintiff's spine including a CT scan revealing degenerative changes in Plaintiff's spine and X-Ray imaging revealing degenerative spondylosis especially in the lower lumbar spine.  Tr. 901[6], 1016.

The ALJ appears to have focused primarily on Plaintiff's ability to perform medium work and structured hypotheticals to the VE in that context during the administrative hearing.  Tr. 65-67.  However, the medical testimony does not support Plaintiff's ability to perform the lifting and carrying requirements of medium work, but seems to indicate Plaintiff may perform the lifting and carrying requirements of light work.  The single hypothetical posed by the ALJ to the VE regarding an individual who could perform the lifting and carrying requirements of light work with additional limitations is ambiguous.  Tr. 67-70[7].  Because of this, this Court finds it necessary to remand this matter for purposes of better exploring and determining the issue of

---

[6] Soft Tissues/Musculoskeletal: "Degenerative changes with canal narrowing in the mid to lower lumbar intervertebral levels."  Exhibit 14F p. 41 Tr. 901.

[7] "Q:  If the person were further limited as far as the lifting and carrying would be about ten pounds at a time, and the person could only stand and walk about one to two hours at a time, the person could sit about one to two hours at a time, and as far as lifting and carrying that only give out one, two hours at a time also.  Would there be any jobs existing in the national economy that such an individual could perform?  A:  I believe at the light level there would be, Your Honor, yes.  Q: I'm wondering if that would only be about a six-hour workday though?  A: I'm sorry, you said one to two hours at a time for each? Q: Oh, I'm sorry, no that would have been one to two hours total.  A: Oh total, I'm so sorry.  Yes, Your Honor, at that point I could not provide any competitive work on a sustained basis for examples."  Tr. 67-70.

15

whether the claimant is able to perform light work, consistent with the medical findings. Accordingly, this matter shall be remanded for further administrative proceedings.

## CONCLUSION

For these reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 13) is GRANTED in part and DENIED in part. The Commissioner's Motion for Judgment on the Pleadings (Dkt. No. 15) is DENIED. The Clerk of Court shall enter judgment and close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         May 25, 2021

*H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**